# Herndon
**HERNDON POLICE DEPARTMENT**



# CONFIDENTIAL PERSONNEL MATTER

TO:      File

FROM:    Colonel Maggie A. DeBoard *MAD*
         Chief of Police

FILE:    2020-IA-011

DATE:    September 30, 2020

SUBJECT: Commander's Review

Following a complete review of the administrative investigation conducted by Captain Pihonak, I have determined that his report represents a full and complete examination of the facts and circumstances relevant to this investigation. As a result of that report and my administrative hearing with SPO Randles, I have reached the following conclusions in this matter:

## Captain Stephen J. Thompson

- Regulation A-5, Standards of Conduct, Section 1., Unbecoming Conduct: **SUSTAINED**
- Administrative Regulation 1-19, Sexual Harassment: **SUSTAINED**
- Regulation A-1, Truthfulness: **SUSTAINED**

## SPO Denise Randles

- Regulation A-5, Standards of Conduct, Section 1., Unbecoming Conduct: **SUSTAINED**

The basis for this decision is as follows:

## Captain Stephen J. Thompson

Due to the abrupt resignation of Captain Thompson prior to the completion of this investigation, on the day before he was scheduled to take an administrative polygraph to clear up discrepancies in his statements, no administrative hearing could be conducted with him. The findings and conclusions, therefore, are based strictly on the interviews and recorded statements from both Captain Thompson and SPO Randles during the course of this investigation.

Plaintiff's Exhibit 2

The facts in this case are clear and the majority of them are not disputed by either party. Approximately 12-13 years ago, then Sergeant Thompson solicited an intimate and ongoing sexual relationship with SPO Randles at the workplace while he was a supervisor and she was an officer with the department. His advances began when she was working in the Neighborhood Resource Center (NRC) and progressed to a consensual sexual relationship with her, both on and off duty, that occurred over the course of the next one to two years. This relationship remained secret between the two of them, using dedicated phones purchased to communicate without being detected, since both were married to other people when this relationship began. The relationship continued after then Sergeant Thompson became SPO Randles' direct supervisor after she was promoted to corporal and assigned to his patrol squad.

At some point when SPO Randles chose to end the intimate relationship, then Sergeant Thompson continued to make sexual advances towards her in the workplace, which continued for a couple of years. SPO Randles chose to rebuff these advances on her own and did not report them to anyone in the department. She stated throughout this investigation that she told no one other than her therapist about her affair with then Sergeant Thompson, despite ongoing rumors from friends and colleagues that the two of them were having a relationship. These unsolicited sexual advances eventually stopped as then Sergeant Thompson was elevated to higher positions of authority within the department, and he did not have the same level of contact with and access to her that he had in the past. It was not until SPO Randles' performance problems fell under the command of Captain Thompson did she disclose this issue to a commander for the first time due to her concern that he was specifically targeting her due to their past relationship.

Captain Pihonak laid out a clear argument in his investigation for sustained violations of Standards of Conduct, Sexual Harassment and Truthfulness against Captain Thompson. Despite the time frame that had passed since these incidents occurred, SPO Randles provided detailed accounts of various intimate encounters with then Sergeant Thompson, both on and off duty. She also provided detailed accounts of inappropriate behaviors and sexual advances that then Sergeant Thompson engaged in over several years in the workplace. Only after confronted with the detailed statements provided by SPO Randles did Captain Thompson admit to them. At no time during his interviews with Captain Pihonak did he offer any of this information willingly on his own.

At the time the consensual sexual relationship was occurring, then Sergeant Thompson held a position of authority over SPO Randles and willingly and knowingly engaged in misconduct on duty. Conveniently and likely for self-preservation, he has admitted to all the sexual encounters and behaviors that were described by SPO Randles, except for the specific ones that occurred within Town buildings. These two specific incidents, which likely would be the most easily to recall because of the forbidden location they occurred at, were the only ones that Captain Thompson either could not remember or denied outright. SPO Randles detailed accounts were not only considered credible, but her credibility continued to build throughout this investigation as Captain Thompson was confronted with these incidents and reticently admitted to them. It is quite improbable that the only sexual encounters he would not remember are those that happened on duty and within Town buildings. He offered no additional information and repeatedly refused to admit to various incidents until confronted with specific details that SPO Randles provided.

Additionally, when brought in for the first time to be interviewed by Captain Pihonak, Captain Thompson was asked at the start if he knew why he was being investigated. He denied knowing what the investigation was about, yet he had arrived at the interview with a copy of the Town's Administrative Regulation on Sexual Harassment (AR-19) and a prepared statement, which he refused to provide a copy

of to Captain Pihonak, instead choosing to read from it. In his prepared statement, instead of taking responsibility for his actions, Captain Thompson questioned the timing of SPO Randles' complaint, referring to it as retaliatory and a way to avoid discipline for her current performance problems, which had recently arisen to the initiation of a performance improvement plan. He also made allegations that SPO Randles has made comments of a sexual nature in the past with other employees, has been untruthful and performed poorly in her past work assignments, and willingly signed and acknowledged forms that were previously used for employees to report sexual harassment in the workplace. SPO Randles does have a documented history of performance issues over the last few years, but there is no indication of untruthfulness in those investigations. Throughout this entire investigation, Captain Thompson continually looked to minimize his culpability by placing blame on SPO Randles and point to his current work performance as a reason to minimize his past misconduct.

Due to Captain Thompson's resignation, no formal discipline could be imposed. His misconduct, his lack of accountability for his actions, his lack of truthfulness and omission of material facts during this investigation, and his failure to disclose these incidents and behaviors as he was elevated to greater levels of responsibility in the organization destroyed his credibility, created liability for the Town and breached the trust placed in him to serve the community and represent the Herndon Police Department with integrity and professionalism. Had Captain Thompson not resigned, he would have been terminated from this agency for these violations and been ineligible for rehire.

### SPO Randles

On August 28, 2020, at 1000 hours, a disciplinary hearing was held in my office with SPO Randles. Present for the hearing was Captain Pihonak. The hearing began with Captain Pihonak providing a brief review of the investigation. Following the review by Captain Pihonak, I asked SPO Randles the following specific questions:

> Q – Are there any other witnesses to this incident that should be interviewed?
> A – No. I didn't tell anybody else.
>
> Q- Are there any other investigative steps which you feel should be taken to obtain all the relevant facts surrounding this incident?
> A – No.
>
> Q- Do you have any concerns about the conduct of this investigation?
> A – No.

SPO Randles was then afforded the opportunity to ask any questions concerning this investigation, to present any evidence on her behalf, and to make statements. She began by making statements about how this entire investigation was very stressful and emotional for her. The one question I posed was why she had waited so long to come forward with her concerns, seeing that I had demonstrated a continued trust in Captain Thompson over the past several years, elevating him to such a high position of authority at the captain rank. SPO Randles could not provide a definitive answer but stated, *"there were so many little hints all over the place. I don't know and I didn't say anything, but I wanted to."*

I explained to SPO Randles that since these incidents happened almost entirely before I arrived at HPD (the intimate sexual relationship ended before I was hired as Chief), I would have had no way of knowing that she had a prior inappropriate relationship with Captain Thompson dating back to 2009, or that

problems were continuing between them for the first couple of years I was here. I did explain to SPO Randles that once Captain Thompson was transferred to CIS as a sergeant, I did notice that he was spending an inordinate amount of time sitting in her office chatting happily with her on and off throughout the workday. Due to concerns over his productivity, I ordered this to stop, which it promptly did. At no time when this was occurring or after those frequent office visits ended, did SPO Randles say anything to either myself or any other supervisor or commander in the building about ongoing inappropriate behaviors directed towards her from Captain Thompson. SPO Randles herself confirmed this during the investigation.

SPO Randles also stated that because she was having performance issues that led to internal affairs investigations over the past two years, including being placed under a Performance Improvement Plan, she did not think I would believe her if she came forward with these allegations. I explained to her that these allegations were immediately taken seriously and treated separately from her ongoing performance issues. The details she provided in describing these incidents when initially disclosed were a clear indication that misconduct had occurred. In fact, on the morning after the allegations were made when Captain Thompson arrived for work, he was not only sent home and immediately removed from her chain of command, but he was also relieved of duty, barred from the building, and ordered not to have any contact with her.

SPO Randles also stated she felt like someone should have looked deeper into her performance issues to determine a cause. I explained to her that she had numerous opportunities to approach either myself or the other commanders about this issue, and that several of her IA issues were brought against her by commanders and supervisors other than Captain Thompson. SPO Randles showed no interest in discussing anything related to her performance in past internal affairs hearings with her commanders. It was not until her most recent performance issues arose where Captain Thompson was providing oversight and direction that she disclosed the past relationship between them.

The performance and IA issues that SPO Randles experienced began before Captain Thompson was promoted to captain and placed in her chain of command. They began in 2018 when her full-time position as a crime prevention officer was eliminated and she was transferred back to patrol under Captain Thunman, and then temporarily under Captain Anzengruber while Captain Thompson was away for three months at school the following year.

Despite her insistence that she never had a problem with returning to the street, it was quite clear that SPO Randles was not happy with the transfer, as evidenced by her attitude and lack of productivity. This was witnessed by all the supervisors and commanders that were in positions of authority over her and who worked with her to increase her productivity, morale, and hold her accountable. Over the past two years under different commanders and supervisors, each time SPO Randles would come before them for discipline or counseling, she made few comments, asked almost no questions, often did not read the IA and corrective action documents presented to her in closed door meetings, seemed quite disinterested in her job and unfazed about her ongoing performance problems. At no time during these interactions did SPO Randles voice concerns regarding Captain Thompson or the issues that stemmed from this investigation. It should be noted that he was not even in her chain of command for almost the entire first year when these issues started. This by no means is meant to lessen the impact of Captain Thompson's behavior and harassment towards SPO Randles over the years. It is being pointed out to clarify that her performance issues were largely separate issues that began when her specialized position was eliminated due to staffing and she was transferred back to patrol.

In my hearing with SPO Randles, she provided another reason that contributed to her hesitation to come forward. SPO Randles stated she thought often about the comment Captain Thompson made to her in the kitchen area years before (approximately year 2012-2013) when he was a sergeant assigned to CIS, saying to her, *"You know how two people keep a secret? If one of them is dead."* Although Captain Thompson admits to saying this in a light-hearted and joking manner, SPO Randles clearly felt concerned about this comment and considered it threatening, providing a detailed account of it even 8 years later when she was interviewed for this investigation.

Although SPO Randles did admit on several occasions during this investigation that she was a willing participant in the sexual encounters with then Sergeant Thompson, both on and off duty, and that she understood her behaviors were wrong, Captain Thompson held a position of authority over her and clearly carried the responsibility to fulfill his supervisory responsibilities with integrity and ethics. It is also clear that once the relationship was ended, continued inappropriate advances were made by Sergeant Thompson for a period of time, without the knowledge of any supervisor or commander in the department.

In considering appropriate discipline in this case, I have considered the time that has elapsed since these incidents occurred, SPO Randle's position as a subordinate to then Sergeant Thompson, and more importantly, the continued unsolicited and unwanted advances of then Sergeant Thompson towards SPO Randles that appear to have continued over the course of a few years after the intimate relationship was ended. SPO Randles stated it was clear that then Sergeant Thompson did not want to end the relationship and continued to "stalk" her through the various sexually harassing behaviors described in the investigation. SPO Randles provided detailed and credible accounts of these unwanted and unsolicited behaviors, the vast majority of which were admitted to by Captain Thompson during this investigation.

As a result of her willing participation in the on duty sexual encounters with then Sergeant Thompson over 8 years ago, which SPO Randles knew was against department policy, she was issued an oral reprimand for her actions.